[No. 7,802.—In Bank.]
Sept. 21, 1882.

## L. C. CHANDLER *v.* THE PEOPLE'S SAVINGS BANK.

WAIVER OF RIGHT TO MARSHAL SECURITIES.—P., to secure his note for fifteen thousand dollars, made a deed of trust to the C. Bank of a tract of land, and also assigned to it a promissory note and mortgage which he held against C.; and afterwards, to secure his note of about forty thousand dollars, executed to the O. F. S. & C. Bank another deed of trust upon the same land and other property. After the execution of the last note, P. sold and assigned to his wife his interest in the C. note. Subsequently, the notes of P. to the C. Bank and to the O. F. S. & C. Bank, with their respective securities, vested in the defendant by assignment; and the defendant being thus the owner and holder of the two notes and securities, caused the trust land to be sold under the first deed of trust, and became the purchaser, for the sum of ten thousand one hundred and twenty-five dollars—leaving a balance on the first note, and the second note wholly unsatisfied. It then sold the land and its interest in the note to C.

*Held*, that Mrs. P., as the assignee of P., was entitled to the surplus due upon the C. note after satisfying the balance due on the note of P. to the C. Bank.

APPEAL by plaintiff from part of a judgment for intervenor in the Superior Court of the County of Sacramento. CLARK, J.

*H. O. Beatty*, for Appellant.

*J. McKenna,* for Respondent.

McKEE, J.:

Samuel Poorman, being indébted to the Capital Bank, of Sacramento, by a promissory note for fifteen thousand dollars, secured its payment by a deed of trust made to the bank for two hundred acres of land near the City of Sacramento, and by two negotiable promissory notes, which he assigned to the bank—one made by L. C. Chandler, the plaintiff in this case, for three thousand dollars, secured by mortgage upon real property, and the other by one Todhunter for four thousand dollars. The Todhunter note was taken up when it fell due, and the amount was credited by the bank on Poorman's note leaving due and unpaid upon it, in April, 1879, a balance of about twelve thousand two hundred and eighty-eight dollars, Upon receipt of that sum the bank, at that date, assigned and transferred the note itself and its securities to one Smith, who afterwards, for a valuable consideration, assigned and transferred them to the People's Savings Bank of Sacramento, one of the defendants in the case. At the same time the People's Savings Bank became the assignee of another promissory note, given by Poorman in March, 1878, to the Odd Fellows' Savings and Commercial Bank of Sacramento for about forty thousand dollars, which was secured by a subsequent deed of trust on the same two hundred acres of land and some other real property, and also by a deed absolute on its face of the same property.

Being thus the owner and holder of the two promissory notes given by Poorman, and of the several liens and securities for the satisfaction of each of them, the People's Savings Bank caused the two hundred acres of land to be sold under the first deed of trust, and at the sale the land was bid in for the bank for the sum of ten thousand one hundred and twenty-five dollars.

After acquiring the right of property to the land, the bank entered into an agreement with Chandler, to sell and convey it to him, and to transfer to him all the interest which it had in his six thousand dollar note and mortgage for the sum of twelve thousand dollars. In performance of this agreement the bank, on August 9, 1879, caused the trustees, who had sold the land, to make the deed of it to Chandler. This deed the bank had recorded, and notified Chandler of the fact; and Chandler executed and delivered to the bank his promissory note for twelve thousand dollars, and a deed of trust on the land as security for the payment of the note; but the bank withheld from his possession the deed, and refused to deliver the six thousand dollar note and mortgage, assigning as a reason that Mrs. Poorman—the intervenor in the case—claimed an interest in them. And, in fact, Poorman, the payee of the note, had, in December, 1878, after he had assigned it to the Capital Savings Bank, "sold, assigned, and transferred to his wife, Margaret Poorman, all indebtedness of every nature and kind due and owing from L. C. Chandler on book account or otherwise."

Failing to obtain possession of his deed and note and mortgage, Chandler refused to pay the interest due on his twelve thousand dollar note. The bank ordered the land to be sold under the deed of trust, and the action in hand was brought to enjoin the sale, to obtain possession of his deed and the six thousand note and mortgage, and for a decree adjudging that Mrs. Poorman had no right, title, or interest in the note and mortgage.

Upon the trial of the issues raised by the pleadings in the original action, and by the intervention, the Court adjudged that, on August 9, 1879, after the arrangement between Chandler and the bank as to the sale and transfer of the two hundred acres of land, and of the interest of the bank in the six thousand dollars note and mortgage, there remained an undisposed of balance of one thousand and eighty-seven dollars and sixty-six cents on the note, to which the intervenor was entitled by her assignment of December, 1878; and that, as assignee, she was entitled to a judgment for that amount and interest thereon, from August 9, 1879, and to a decree of foreclosure unless the plaintiff paid the same before sale; and

that upon making such payment the plaintiff was entitled to delivery of the six thousand dollars note and cancellation of the mortgage, and to possession of his deed, and to an injunction upon payment of the interest due on the twelve thousand dollars note within thirty days, otherwise the injunction would be dissolved.

It is contended that the judgment in favor of the intervenor is erroneous, because she acquired no interest in the Chandler note by the assignment to her of December, 1878, as her assignor had, before that time, transferred all his interest in the note by the transaction between him and the Capital Bank, and the subsequent transaction between him and the Odd Fellows' Bank, so that, in December, 1878, there remained in him no residuary interest to transfer, and, therefore, the intervenor was not entitled to judgment against Chandler nor to foreclosure of the mortgage.

But after the assignment to the Capital Bank there remained in Poorman an assignable interest in the note, and that interest passed to the intervenor by the assignment of December, 1878, unless the assignor had previously transferred it. But, in fact, he had made no previous assignment of it. It is only claimed that when, on the sixth of March, 1878, he conveyed by deed of trust to the Odd Fellows' Bank, by way of security, the same two hundred acres of land which he had formerly conveyed to the Capital Bank by deed of trust for a like purpose, the Odd Fellows' Bank became a lien holder upon the land subordinate to the Capital Bank, and as such was entitled in law to control the assignable interest of Poorman in the note.

This claim is founded upon the right which a subordinate lienholder has, under the law, to demand that the prior lienholder shall resort to the things upon which he has an exclusive lien, etc., for the satisfaction of his lien, if he can do so without risk of loss to himself or of injustice to other persons. (C. C., § 2809.) And it is contended that the acquisition of that right by the Odd Fellows' Bank imposed upon the Capital Bank the duty of exhausting the entire interest in the Chandler note and mortgage, upon which it had an exclusive lien, before proceeding to enforce its prior lien against

the land covered by the subordinate lien of the Odd Fellows' Bank; and that this duty, with its corresponding right, passed by the assignments of the original indebtedness of Poorman and its securities to the People's Savings Bank, which had become the sole owner and holder of the exclusive and subordinate liens.

Of course, a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be displaced by some act of the lienholder which shall postpone him in a Court of law or equity to a subsequent claimant. As an exclusive lienholder on personal securities the People's Savings Bank might have exhausted those securities for the satisfaction of its prior lien before proceeding to enforce it against land on which it had also a prior and subordinate lien, but it did not; it sold the land under the first deed of trust, applied the proceeds as far as they went in satisfaction of its prior lien, and looked to the personal securities, on which it had the exclusive lien, for the surplus.

By the sale under the first deed of trust, and by the absolute deed under the second deed of trust, the entire estate in the two hundred acres of land vested in the People's Savings Bank; and, being the absolute owner of the land, and holder of the note and mortgage on which it had the exclusive lien, it sold and transferred them to the plaintiff. By the sale the plaintiff took whatever estate and interest the bank had in them on the ninth of August, 1879. On that day the bank claimed no right to the surplus of the note after satisfaction of its prior lien. It waived whatever right it had to the surplus. A lien or a right may be waived or lost by any act or agreement between parties by which it is surrendered or becomes inapplicable. So when the bank sold and transferred the note and the land, it discharged them of the liens which it had upon them, and, as vendor, absolved itself from all the rights and duties appertaining to them. Its rights, title, and interest in them—whatever they were—passed to and became vested in its vendee, Chandler; and the surplus of the six thousand dollars note, after the satisfaction of its liens, belonged to the payee of the note (Poorman) or his assignee. The finding of the Court that the intervenor was his assignee,

and the decree adjudging her to be such, and entitled to the residuary interest in the note were therefore correct; and there is no error in the judgment prejudicial to the plaintiff. As to him the judgment appealed from is therefore affirmed.

Sharpstein, Myrick, Ross, and McKinstry, JJ., concurred.